CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 20 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CORA N. WOMACK, | ) | CASE NO. 4:05CV00055 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's March 31, 2004 claim for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 *et seq.*, is before the undersigned under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. For the reasons that follow, the undersigned will RECOMMEND that an order enter REVERSING the Commissioner's final decision, GRANTING the plaintiff's motion for summary judgment, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge ("Law Judge") applied the sequential five-step process outlined in the Commissioner's regulations to determine whether the plaintiff was "disabled" under the Act. A Law Judge must consider, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment

making her disabled as a matter of law, (4) can return to her past work, and if not, (5) retains the capacity to perform specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). The claimant bears the burden of production and proof in the first four steps of the inquiry. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). At the fifth step, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. *See id.*

In this case, the Law Judge found that the plaintiff, who was 46 years old on her alleged onset date of disability and 49 years old on the date of the Law Judge's decision, possessed an eighth grade education and had past relevant medium-to-heavy work as an inspector, cutter and cook. (R. 14, 20.) The Law Judge determined that the plaintiff suffered arthritis in the right knee, obesity and a pulmonary impairment which were severe, but not severe enough to meet or equal any listed impairment (R. 15, 21.) Despite evidence of valid WAIS IQ scores ranging from 48 to 55 and a GAF of 50, the Law Judge specifically found that plaintiff did not suffer a severe mental impairment.[1] (R. 15-16.) The Law Judge determined she was unable to perform her past relevant work, but her complaints about her limitations to be less than credible, he found plaintiff able to perform a full range of indoor sedentary work. (R. 19, 21.)[2] The Law Judge appears to

---

[1] A GAF of 50 indicates the person has serious mental symptoms, such as suicidal ideation, severe depression, anti-social behavior, or a serious impairment in social, occupational or school function such as being unable to make friends or keep a job. *Dawson v. Barnhart*, 2006 WL 982005, *2 (W.D.Va. 2006) (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994)).

[2] The Law Judge made no specific findings regarding whether there were non-exertional limitations on plaintiff's ability to perform a full range of light work, though there is uncontroverted evidence that such do exist.

Case 4:05-cv-00055-JLK-BWC   Document 14   Filed 04/20/06   Page 2 of 7   Pageid#: 72

have applied the Medical-Vocational Guidelines ("grids") to regulatorily compel a finding that she was not disabled under the Act.[3]

Plaintiff appealed the Law Judge's decision to the Appeals Council. The Appeals Council found no basis in the record or in the reasons the plaintiff advanced on appeal to review the Law Judge's decision. (R. 5–7). Accordingly, the Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527- 404.1545 and 416.927-404.945; *Hayes v. Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

By the same token, when a claimant has proved a *prima facie* case of disability by demonstrating he/she suffers impairments which prevent the performance of any past relevant work, the burden shifts to the Commissioner to produce evidence that jobs were available to a

---

[3] A VE was present and testified not only to the nature of plaintiff's past work, but to jobs available given the parameters of the hypothetical questions posed by the Law Judge. These questions assumed plaintiff's ability to perform sedentary work, though the VE patently testified that she possessed no skills transferable to sedentary work. (R. 39-40.) No questions were posed which would have had the VE to account for plaintiff's intellectual function or any other non-exertional limitations.

3

person with the plaintiff's maladies and limitations. 20 C.F.R. §§ 404.1520 and 416.920. Should the evidence reveal non-exertional limitations on the claimant's ability to perform work-related activities, a VE is required in order for the Commissioner to discharge her burden. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987). In that connection, vocational evidence is relevant only if the VE accounts for all the claimant's maladies and their effects, and the hypothetical questions posed to a vocational expert must be broad enough to allow the VE to account for all significant functional limitations disclosed by the substantial evidence. *Hancock v. Barnhart*, 206 F. Supp. 2d. 757 (W.D.Va. 2002) (quoting *Young v. Apfel*, 1999 WL 33117094 (D. Me. 1999) (unpublished)); *see also Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989).

Plaintiff's first argument addresses her intellectual function. She offers that the law Judge erred in failing to find her disabled as a matter of law under §12.05B of the Listings of Impairments, 20 C.F.R. §§ 404.1525 and 416.925, Appendix 1, §12.05B. As the plaintiff points out, the WAIS scores submitted into evidence in this case fall within scores which render a claimant disabled under the Listings, and there was no objective evidence to the contrary. The psychologist, Samuel J. Fletcher,. Ph.D. performed a patently thorough evaluation, there was nothing suggests the scores produced were invalid, and these IQ scores were corroborated by the WAIS Comprehension and Similarity subtests. (R. 264-265.) Moreover, there is no evidence contradicting Dr. Fletcher's observations that plaintiff could not perform detailed or complex tasks and would have difficulty performing simple tasks, or that she would be unable to attend work with any regularity or would be able to perform any work at all without "very close supervision." (R. 265.) Essentially, Fletcher diagnosed plaintiff as seriously retarded with a

4

guarded prognosis, irrespective of her physical maladies which the Law Judge found to be severe. (R. 264.)

The Law Judge made an effort to explain away the impact of the plaintiff's IQ scores and her uncontroverted mental impairments with the rather cryptic comment that "an individual of the claimant's mental status would require hospitalization." (R. 15.) This comment was followed by a disclaimer that he was not making any medical diagnosis, and by a further comment that "[w]e seem to have seen two different people[, ]" signaling that the person he observed at the hearing could not have been a person with the same condition observed by Fletcher. (*Id.*) In the end, and without securing any evidence countervailing that of Dr. Fletcher, the Law Judge simply points to the absence of any other psychological evidence in the record offered by any other of her treating or examining physicians who saw her in relation to her physical condition in order to reject plaintiff's psychological evidence and find she suffers no severe mental impairment.

In the undersigned's view, the Law Judge substituted his own judgment for that of an expert and engage in little more than "sit and squirm" decision-making. To put it differently, where there is no objective evidence countervailing that offered by an examining medical expert, and where the objective tests performed by the examining source are facially valid and show that the claimant's impairment meets or equals a listed impairment, a Law Judge cannot substitute his judgment for that of the medical expert to deny the claim. Moreover, just because a claimant shows up at a hearing and fails to demonstrate the symptoms that are produced by a diagnosed malady during the course of the hearing, the Law Judge cannot then rely on such a failure to "sit and squirm," so too speak, as a basis for his decision-making. In addition, the instant Law Judge never addressed the abject limitations revealed in Fletcher's unchallenged and facially valid

psychological report, except to say that this condition was not addressed by any other medical source, from which he simply made a finding plaintiff suffered no severe mental impairment.

Of course, the Commissioner has taken the position in her brief supporting her motion for summary judgment that the decision is supported by substantial evidence. She offers that Dr. Fletcher noted that her IQ scores could have been impacted by her depression and medication and opined that plaintiff "appeared to be of fair to poor reliability." (Def.'s Brief at 8.) One might ponder how reliable any severely retarded person could be in the first instance, assuming Fletcher was challenging plaintiff's credibility as that term seems to have been used by the Law Judge. After all, Fletcher proceeded in the next phrase of his report to point out that plaintiff was not malingering, and he went on to reveal the essentially disabling effects of plaintiff's mental impairment. (R. 264-265.) Moreover, he was of the view that plaintiff was not even capable of handling her own funds. (R. 265.)

It is the undersigned view that the substantial, uncontroverted evidence in the case compelled a finding that plaintiff's intellectual function met the requirements of §12.05B of the Listings so as never to allow the inquiry to reach the next level of the sequential process, much less the final level. Even if the evaluation process should have reached that level, the only evidence in the record offered on plaintiff's mental status precluded any gainful activity. The undersigned does not believe it proper for the Commissioner to create out of whole cloth substantiation for the absence of a severe impairment, here one which meets the requirements of the Listings, simply because there is no other medical evidence to substantiate it. Had there been a question of the legitimacy of Dr. Fletcher's report, the Law Judge easily could have submitted the plaintiff to a consultative examination. Perhaps the risk was too great, but for whatever

6

reason that tool was not used, the absence of other medical evidence should not be allowed to overcome the otherwise uncontroverted and patently valid evidence offered by the plaintiff.

Thus, it is RECOMMENDED that an order enter REVERSING the Commissioner's final decision, GRANTING the plaintiff's motion for summary judgment, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: *[signature]*
U.S. Magistrate Judge

4-20-06
Date